We believe that the lower court decision should be reversed, should be remanded, and this court should order Liberty Mutual to begin defending and paying the defense costs for the fire at the refinery at the Valero premises that occurred in 2012. We believe you have to enforce the alienated premises coverage endorsement. That endorsement, your honor, is pretty much dispositive of this case. It makes our case different than all of the other cases that have been cited both by the other side, by Liberty, as well as the court's characterization below of the Unigard case, which the court below believed was relevant to the resolution of this case. We believe, your honor, that what you have to do in an insurance coverage case, as you know, is follow the rules of insurance coverage construction. Ambiguity should be resolved in favor of the policyholder. If there's one or two reasonable interpretations, the policyholder prevails. Endorsements prevail over general provisions in a policy. You can't have illusory coverage, and by virtue of what the court did below, it made the alienated premises endorsement illusory. It pretty much wiped it off as if it didn't exist. But more importantly, in the duty to defend, you look at the allegations of the Valero complaint. So I think we have to drill down for a second and ask ourselves two very, very preliminary questions. If you look at the Valero complaint, what do they allege happened and what do they want? What Valero alleges happened was that a pipe failed, it exploded, it caused fire and property damage. It's a breach of contract case though, right? It is a breach of contract case. Yeah, proceed. But, okay, it's a breach of contract case, and maybe we should just stop there for two seconds. It's a breach of contract case, and it doesn't matter for two reasons. One, the alienated premises endorsement coverage that allowed for the sale of the refinery from Murphy Oil to Valero was a new defined risk. That's a critical distinction. It was a new defined risk. Remember the McGraw-Hill decision, which we gave you by letter a couple weeks ago. The new defined risk matters. Even Judge Brooks, and we'll stop here for a second, even Judge Brooks, remember when he looked at the USF&G case, the USF&G case was the second case in the trilogy. The USF&G case, he said, there was a specific type of contract, in that case the insured contract, which is a covered contract, you know, as long as you have property damage that results from an occurrence. So, you know, he himself recognized that there were certain specific, and those were his words, specific types of contracts that allow there to be coverage if the rest of the insurance policy applies. Here we have another specific type of contract. The alienated premises, the sale of the refinery, remember, that used to be an excluded event per se. We wouldn't be here today if Liberty hadn't changed the policy. That turned first-party property into third-party property. How did the property get from Murphy to Valero? By contract. We have to use some common sense. But since that is a covered proposition, that means that kind of contract is a carve-out and is no different than the insured contract that was at issue in the USF&G case. What do we do with the fact that the way Arkansas views it, and I think this is a different way, different than maybe perhaps some other states in the circuit, seems to review it as a sequential process. So you look at the initial grant of coverage, then you look at the exclusions, and then you look at the exceptions. And the Unigard case and some of the other cases that Judge Brooks relied upon go on that initial grant of coverage. They say that this is just not covered, and therefore the exclusions and the exceptions simply don't matter a whole lot because you can't bring something within that initial grant of coverage through that mechanism. Let me respond. The alienated premise coverage endorsement, you have to read it carefully. It's turned something, it does make damage to sold property part of the insuring agreement. Because you have to read the exclusion carefully. It's now saying property damage to premises that were sold is now a covered event unless, and then you get into the exclusionary part of the endorsement that says unless the hazard was known or should have been known at the time of the sale. But you're still talking in terms of exclusions. And I understand that your argument is that this exclusion puts it in the initial grant of coverage. But the problem I have is that's not how Arkansas seems to approach it. Now you can argue that maybe Arkansas should approach it differently or we should interpret, but that's not, I don't think, how Arkansas does it. I think I would disagree with that because you have to read, you have to do two things. You have to look at the table of contents in the liberty mutual policy. The alienated premises coverage endorsement is above the line. If you look at, you know, above the line, below the line, it says it's a coverage. It doesn't put it below the line in the exclusion. It, so there's a new presumption now. There's a new presumption that property damage at alienated premises is now a newly defined risk. That puts it in the insuring agreement. So if you do your logic, your honor, where you start from the insuring agreement, do you have an occurrence? Do you have an accident? Yeah, we have an accident. We have a fire that occurred at the refinery. That's a covered event in the first instance now. That's what the policy says. You know, that's what the endorsement did. So it does turn it above the fold. It does move the alienated premises following your logic path and Arkansas's logic path, it does exactly what you're saying. You know, the first question is, do we have covered property damage? The answer to that is yes. We have an accident, the explosion. Does the policy now cover that? The answer is yes. So you're absolutely right that you have, if you go down that logic path, we fit it. You know, we fit the model. And let's look at, in addition to the table of contents which says it's covered, remember what the endorsement says. The endorsement itself says this endorsement modifies the coverage provided. Provided, in other words, that's active. It's now providing new coverage. What do the USF&G say about that? Now, counsel, I think you're mixing the words. The top of the page says this endorsement changes the policy. Yes. But you misquoted it. It says this endorsement modifies insurance provided. It doesn't say the word coverage, counsel. It says modify insurance. It modifies the insurance provided. That's true. Yes, but the insurance provided, what is the insurance that's provided? And then it specifies three different things it modifies. Go ahead. It modifies the old, it modifies the old exclusion, your honor. No, it modifies CGL. It modifies CLU and it modifies the excess. And the CGL is the policy at issue. Yes. And that goes to what the judge just said. The CGL covers property damage and that's what it's modifying. It's now moving what used to be uncovered first party property that was part of the owned property exclusion, it's now moving it to. Well, the final word is the word PART, P-A-R-T. You think that means all the CGL form, what's called form back on page one of 16? I don't know what to call it, but it's the front page of the CGL coverage. It uses the word PART, P-A-R-T. Yes. Okay. Does that refer back to page one of what's called form back there? It says the endorsement modifies insurance provided under the following, the CGL. That's what it's at issue for. Yeah, but it's the last word is PART, counsel. That's what I'm trying to get you to focus on. Yeah, commercial general liability coverage PART. That's the answer. Yeah, but wait. Does PART refer back to the word form? When you look back at page one of 16, it says commercial general liability coverage form, F-O-R-M. Or do you think PART means part of something? It's the covered. It's the counsel's. This policy has. That's my question. That's my question. The word is form. Does form mean part or does form not mean part? Does form. F-O-R-M. If you look at page one of 16, on the front page of the CGL, it says commercial general liability coverage form, F-O-R-M. It's a word. Yes. Back here, the word is PART, P-A-R-T. It's part of the word. Are they the same? Are they different? They're the same. You think they're the same? Yes. Okay. Yes. This. This. That was really the question. Thank you for finally getting to it. This exclusion is putting it there. Okay. I just want to make one additional point before I reserve my time. Sticking with that logic, what did the USF&G court say matters? That's Fidelity, right? What the Arkansas courts call Fidelity. When Fidelity talked about the Unigard case, what did it say? It said the lease agreement in Unigard was neither provided for nor anticipated. We just read this endorsement. Counsel, I think there's still one critical piece of information missing here. That's the answer to this question. Would Murphy Oil have been liable to Valero for this property damage in the absence of the asset purchase agreement? The answer is yes. And under what theory of liability? The allegations and the complaints sound in tort. And has the statute of limitations run on that tort? If they had brought a tort claim, but as we point out, that question is a red herring. Because remember, the asset purchase agreement said they could only bring a claim under the asset. In other words, we don't know what Valero would have done. But that's not what the question asks. The question says, and that really, you know, the question says, and this goes into the but-for analysis from, did the breach of the contract, did some non-covered event, was that the, the test is, what happened? That's the test. And first of all, your question. So even in the absence of the asset purchase agreement, it's your position that Murphy Oil would still have been liable to Valero for this fire a year after the sale? Two answers. The answer is yes. Had, had, they would have, in other words, had there been a tort claim, they, Valero would have had to have brought it within the statute of limitations. So they no longer own the property and they're still responsible for a fire a year later? Yes. Because that's the claim. The allegation is that everything happened on Murphy Oil's watch before it was sold to Valero. Independent of the contract. Totally independent. That's the allegation. If you look at the allegations, paragraphs 24 through 50. 24 through 50, part C of the Valero complaint talks about everything that Murphy Oil allegedly did wrong. And everything they allegedly did wrong occurred before the sale. And if you look at, specifically, Valero makes a big deal out of the fact, saying nothing occurred on Valero's watch. Because they didn't want to say that they had anything to do with it. So, so everything occurred. But, but more important to your question, in our case, having a breach of contract is okay. Because the breach of contract is the only way that the alienated premises endorsement makes sense. You're only going to sell the property by contract. That goes to the other point that, just like an insured contract, we have another kind of contract that is covered. That's the whole point. That's what makes this case different. Real quickly, I want to reserve some time. The Fidelity case said the reason that Unigard didn't apply was because the lease agreement was neither provided for nor anticipated by the liability policy at issue. If you look at this endorsement, subparagraph 2 of damage to property, exclusion is replaced by the following. It specifically says that it modifies the insurance provided. That's what makes our case different. Liberty knew full well, when it sold this policy, that the game had changed. You now had a whole different defined risk that you did not have in Unigard, and it was specifically provided for and anticipated. That is the Unigard language, and it applies here with full force. I'm going to reserve the rest of my time. Thank you. You may. Mr. Brown? Thank you, Your Honor. May it please the Court. Mitch Brown for Liberty Mutual Insurance. Your Honor, in answer to your question of opposing counsel, I believe there are coverage parts and then there are forms. The coverage part, Your Honor, would be the insurance section 1 part that is applicable here. And I'd like, Your Honor, appendix page 450, the insuring agreement section Roman 1, numeral 1, and under the subparagraph 2 says, in particular part, no other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under supplementary payments. So counsel's argument entirely is that an exception, one exception to one exclusion, somehow creates new coverage. When this part of the insuring agreement expressly states that nothing creates any new duty other than this insurance part aside from supplementary payments. And so the, as counsel had freely admitted to the Court, we wouldn't be here but for this alienated premises exception argument. He's essentially conceding that there is no coverage under this ordinary insurance policy under Arkansas law, as Joe Strass was pointing out. So his entire argument is that by modifying a particular exclusion and changing an exception to that exclusion, all other exclusions are gone and the insurance coverage part is modified and changed and expanded. And Your Honor, that is not, that is not the law and should be rejected by this Court. The Unigard case, Your Honor, in our opinion, controls this matter. And as Judge Brooks noted, I think correctly, that the facts are, other than a lease involved there versus a sale involved here, the facts are virtually identical. It's Murphy Oil even, as a matter of coincidence, is involved as the insurer, making some of the similar types of arguments that they made there, which was, well, there's an occurrence lurking in the background. There's property damage lurking in the background. But the fact remains, and what they cannot escape, is that the claim was a contract claim for economic loss. Arkansas has made it very clear, CGL policies do not cover contract claims for economic losses. The Fidelity case being the, not an exception really, but talking about insured contracts, which is not an issue here, and that's admitted by Murphy Oil. If the Court wants to get into that issue, I can. But you agree that if, because we're talking about the duty to defend, had a tort claim been brought as a companion claim to the contract claim during the statute of limitations, then the insurance company would have a duty to defend. Probably they would, Your Honor. There are two things that stop it here, and we don't really engage in what could have happened in the past, what didn't happen, which is what they would like you to do. That could be a never-ending series of imaginative arguments, and I'm sure Mr. Shulman would come up with a lot of them, if we could do that, to travel back in time and say, well, what if they were different facts, and what if this happened? Well, I agree, but I'm trying to understand exactly what the bounds of Arkansas law are. And it seems to me that the argument you're making, and the argument you're making of Unigard, maybe it wasn't the Unigard case, but one of these three cases the district court relied on said, look, had it, the case said, had the district, had there been a tort claim, then there'd probably be a duty to defend, but it's outside the statute of limitations. That's right, Your Honor. I think that was Unigard, and they noticed, they said, look, there really does look like there's an occurrence here, maybe it happened, which would be the fire. Really looks like property damage in an abstract sense happened, because there's property burned down, which is the same thing we have. But the key here is this is a liability insurance policy. So the question is, what is the liability? And you have to look at that issue first, and ask the question of, what is this insured Murphy Oil being sued for? They're not being sued for property damage as a result of an accident. They're being sued for breach of a contract under the APA. And in fact, there are two reasons why they didn't bring any tort claim. One, as a matter of fact, statute of limitations has run, and Murphy even acknowledged that, and has pointed that out themselves, that statute of limitations has run out on any tort claim. But secondly, the agreement that they entered into with Valero, with which we had nothing to do, and didn't have any knowledge of, and they heavily negotiated and allocated all these risks between themselves and Valero. Stated that the express and only remedy is to sue us in contract in the state of New York, in the Southern Division. And it said, in pertinent part, any claim arising out of this agreement shall be deemed to have arisen from a transaction of business in the state of New York. So, again, this is a claim for a business transaction, breach of a business contract, not a claim for property damage recovery because of an accident. The fact that there was an accident involved somewhere doesn't matter. In fact, Murphy itself even made that statement in New York. Murphy said, and this is at appendix page 789, in a reply brief, Murphy Oil made the following statement, which is pretty pertinent here. Quote, the fact that a fire occurred and caused damage to the refinery is irrelevant to the question of whether Murphy materially breached the APA. That case is all, that liability that we are having to confront here is all about whether Murphy breached the APA. Did they materially breach that contract? And they are seeking economic losses for that breach. They are not seeking to recover property damage as a result of an accident. Even if this court were to somehow find that there was coverage under the insuring agreement, which I would urge that the court not do and just simply follow the controlling Unigard case, there is an exclusion that directly controls here and excludes this loss, which is the contractual liability exclusion. And that exclusion only has two exceptions. One is the insured contract exception, which Murphy already admits does not apply to this case. The second one is the one that Judge Grass alluded to, which is would have been liable absent the contract exception. What's your answer to that question? The answer to that question is they would not have been liable absent the contract because it's not a question about could have been liable under some hypothetical facts. Would they have been liable? And they would not because of two reasons. The APA prohibits any other remedy. One of the things Murphy did to its credit when it engaged in the agreement with Valero is it said, Valero, when we sell you this, you have no other remedy against us. We have no liability to you except for under this APA agreement. We don't have any tort liability to you. But Valero can't alter the terms of the contract between Liberty and Murphy. That is true, Your Honor. They cannot do that. But again, I think you pivot and look at what is the liability being asserted against Murphy and does this liability policy cover that liability. The liability asserted against Murphy is purely contractual. And secondly, the statute of limitations ran anyway. And, I mean, we're talking about some pretty good law firms bringing cases. I don't think they just sat around and let the statute of limitations run out. I think they realized, you know, this is a contract claim we have. That's what we're making is a contract claim for economic loss, which in Arkansas, the Unigard court, and then later in the, you know, they reconfirmed it in 2013 in the Columbia Sinar case. They were going to stand by Unigard because there are a few cases out there that disagree in other jurisdictions. The alienated premises exclusion cannot, the law is settled, Your Honor, and they can't cite anything that disagrees with this, that an exception to one exclusion does not mean that some other applicable exclusion is gone. So the contractual liability exclusion controls here if you get to an exclusion. That sounds like we're getting into ambiguous territory, though, counsel, if you get to that point. Because you've got two or three clauses that appear to conflict. I don't think so, Your Honor. I think the way that the courts have said it in the, I'm sorry, in the- Arkansas? Arkansas, yes. The Navholz Construction Corporation case, I'm sorry, I don't know if that's, I'm not positive if that's cited, but it's an Eastern District of Arkansas case. I think this court has cited two that case in an opinion called Lexicon Inc. But it just says that exclusions only decrease coverage. They cannot increase coverage, which is what Mr. Schulman's argument is. His argument is that an exception inside an exclusion somehow increases overall coverage. It doesn't do that. What it does is it restores excluded coverage, but you have to have coverage in the first place in order to do that. Generally, an endorsement does add coverage, doesn't it? It depends on what the endorsement is about, Your Honor, but it can. In this case, the only thing it does in this case with the alienated premises exclusion is it alters the exception to that exclusion only. Does not eliminate other exclusions. If that were the case, if it did, you would be talking about potential elimination of the expected and intended exclusion, terrorism, whatever other exclusions are out there, you would be looking at those and saying, well, they must, if they somehow don't conform to this alienated premises fact pattern, they must all be gone too. That's not how the insurance policy is to be interpreted. There are no further questions, Your Honor. I do have one that I don't know the answer to. We have a couple of our states that are fact pleading states. You don't plead causes of actions or give notice, you plead facts. Is Arkansas a fact pleading state? I don't know the exact answer to that. We can find that out.  Don't constitute a claim or cannot constitute a claim for tort liability because of reasons that I've said. Thank you. Thank you, Your Honor. Thank you for your argument. Mr. Shulman. Thank you, Your Honor. I don't have much time. This is not an economic loss case. They are completely misrepresenting what economic loss means. Economic loss means there's no third party property damage, period. It means there's only damage to your work or something that was yours, your product, for example. The alienated premises endorsement made the refinery third party property. The $25 million that Valero is seeking is to pay for third party property damage. Those are not economic losses. They are completely misrepresenting that term as it's used in the law and in basically tort law. Could there have been a tort claim? The answer is could there be allegations of a tort claim? The answer is yes. The Valero complaint is all about allegations of a tort claim. It's all about what happened. This is not a breach of contract claim. The but-for cause, every case we cited, there's eight cases, all say the misrepresentation did not cause, this is an accident. The explosion of the pipe is so much different than specific performance in the Unigard case. The fact that the statute of limitations may or may not have run is not the question. The question is, did this allege third party property damage in the absence of the contract? The answer is yes. Union Electric, Your Honor, is right on point. That's your case where you were pure curian. An endorsement supplants anything that's inconsistent in the standard foreign policy. They are just completely torturing the reading of this endorsement. This endorsement, yeah, it's not an exception to an exclusion. It's saying that what used to be an excluded transaction, I'm out of time. You finish your sentence for sure. What used to be an excluded proposition, damage to property you sold, is now in the first instance, an included risk. Thank you, counsel, for the argument. And case number 19-1140 is submitted for decision by the court.